**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BEVERLY WLIMORE, for and on behalf of herself and other persons similarly situated, )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>)<br>vs. )<br>)<br>CHARTER COMMUNICATIONS )<br>a/k/a SPECTRUM REACH )<br>)<br>Defendant. )<br>) | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

## I.  INTRODUCTION

This case challenges discriminatory employment practices of the Defendant Charter Communications a/k/a Spectrum Reach["Spectrum"] as they relate to former and current African-American employees and applicants. Plaintiff, Beverly Wilmore ["Plaintiff"], alleges that the Defendant engaged in a demonstrable policy of race discrimination in promotions in violation of Title VII of the Civil Rights Act of 1964 ["Title VII"] and 42 U.S.C. § 1981.[1]  The Representative Plaintiff would aver as follows:

---

[1] The Plaintiff is also asserting a termination claim based on the Americans With Disabilities Act Amendments Act 2008.

Spectrum has followed a general practice of discriminating against African-Americans/blacks on the basis of race with respect to promotions and lay-offs to high level senior management positions by enforcing a corporate policy and practice that expressly and impliedly discourages them from seeking higher paying and higher responsibility positions which has systematically denied African-American/blacks the same opportunities as those received by white employees;

This continuing systemic pattern and practice of race discrimination in employment has affected the Class Representative and the class members she seeks to represent in the following ways:

    a. Spectrum intentionally restricted and excluded African-Americans from higher paying and higher responsibility senior management positions by preventing and/or discouraging them from seeking any such positions; and,

    b. The criteria utilized by Spectrum in making selection decisions-to include promotions discriminate on the basis of race in violation of §703(k) of Title VII, 42 U.S.C. §2000e-2(k). Spectrum allows an overwhelmingly Caucasian group of selectors to use non-transparent and unmeasurable processes in making employment decisions to the detriment of its African-American employees. These processes disparately impact African-American employees because they allow subjectivity and favoritism to influence employment decisions. Because of this, the decision-makers are free to exercise their discretion in an

unguided, subjective manner that provides a ready mechanism for Caucasians to vent discriminatory feelings upon African-American employees.

## II. JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(3), and (4), 2201 and 2202, 42 U.S.C. 2000d-2 and 2000e5(f), and 29 U.S.C. § 621, et seq.

2. This is a suit authorized and instituted pursuant to the Act of Congress known as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., as amended, "The Civil Rights Act of 1866", 42 U.S.C. § 1981 and the Americans with Disabilities Act Amendments Act of 2008, 42 USCA § 12101 as amended.

3. Venue is proper in the Southern District of New York because the unlawful employment practices alleged herein were committed by the Defendant here. Thus, venue is proper pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §1391(b).

## III. PARTIES

4. Plaintiff Beverly Wilmore ["Wilmore" or "Plaintiff"], is an African American female resident of the State of California and was last employed with the Defendant at its Birmingham, Alabama location. Ms. Wilmore worked for the Defendant from October 2012 to June 27, 2018. Her last position was as Senior Manager Digital Sales-Media.

5. Defendant, Charter Communications a/k/a Spectrum Reach is a corporation who is headquartered in Stamford, Connecticut. The employment decision(s) complained of here, upon information and belief, were made at its 1633 Broadway Floor 39, New York, New York 10019 location.

## IV. ADMINISTRATIVE EXHAUSTION

10. On October 26, 2018, Ms. Wilmore filed a discrimination with the New York District Office of the Equal Employment Opportunity Commission. Ms. Wilmore received a Notice of Right to Sue on July 10, 2019 and is filing this Complaint within 90 days of her receiving the same. Ms. Wilmore's claims arising under 42 U.S.C. § 1981 do not require administrative exhaustion and are subject to 28 U.S.C. § 1658's four year statute of limitations.

## V. STATEMENT OF FACTS

14. Plaintiff re-alleges and incorporate by reference the foregoing paragraphs with the same force and effect as if fully set out in specific detail herein.

15. Ms. Wilmore is a 60 year old African-American female who began working for the Defendant in 2012. Prior to that she had been in the media, advertising, and telecommunications for thirty years. Ms. Wilmore took an entry level job and worked her way up to the position of Senior Manager Digital Sales-Media, however, she has personal knowledge of white employees with similar work histories

and backgrounds advancing to Director level positions or better.

16. Ms. Wilmore was always rated as an exemplary performer and is unaware of how the Defendant uses its performance metrics in determining who gets promoted. Upon information and belief, how the Defendant determines who gets promoted to high level jobs is shrouded in secrecy which permits free rein to discriminate against African-American employees seeking such positions.

17. Ms. Wilmore has personally observed that Spectrum has or had very few African-Americans in positions at or above the Senior Manager level.

18. In October 2017, Ms. Wilmore suffered health setbacks that required her to take FMLA leave and to eventually apply for short term disability. After having surgery, she returned to work in February 2018, but suffered an episode on or around April 23, 2018 that required follow-up medical attention. She stayed in constant contact with the Defendant during the whole time she was out and kept them abreast of her medical issues.

19. Spectrum never contacted Ms. Wilmore to ask whether she could return to work and the next contact she had from them was a letter dated June 27, 2018, informing her that she had been terminated.

20. Ms. Wilmore is qualified to perform the duties and responsibilities of hre position with or without a reasonable accommodation. Upon information and

belief, Spectrum terminated Ms. Wimore's employment because of its perception that she was disabled which is a violation of the ADA Amendments Act of 2008 [ADAAA].

21. Spectrum also refused to engage in the "interactive process" to assess whether a reasonable accommodation could be made to keep Ms. Wilmore employed even though it knew or should have known that she was experiencing workplace problems because of her health issues.

22. The only accommodation Ms. Wilmore needed was time off from work to get her medicines regulated. She was never given a chance to express this need to Spectrum as she was terminated right after her doctor provided medical information that it had requested.

## VI. CLASS ACTION DEFINITION
**(Race Discrimination)**

23. The Representative Plaintiff sues on behalf of herself and on behalf of all other similarly situated current, past, present, and future employees of the Defendant who are African-American/black, who have been, continue to be, or in the future subject to one or more aspects of the systemic race discrimination described in this Complaint. Such systemic race discrimination includes the Defendants (1) failure to promulgate, maintain, and enforce racially non-discriminatory employment

policies and practices; (2) racially unequal terms and conditions of employment; and (3) racially discriminatory selection policies.

24. The claims herein have been brought and may properly be maintained as a class action because there is a well-defined community of interest among Class members with respect to the claims asserted herein and the proposed Class is ascertainable:

### A. COMMON QUESTIONS OF LAW AND FACT

25. The prosecution of the claims of the Representative Plaintiff require adjudication of narrowly focused questions of law and fact common to her individual claims and those of the putative classes she seeks to represent. The common questions of law would include, *inter alia*: whether the Defendant has engaged in systemic race discrimination in its tolerance of racially discriminatory selection and promotion policies in a manner made unlawful under the "Civil Rights Act of 1964," 42 U.S.C. § 2000 et seq., and "The Civil Rights Act of 1866," 42 U.S.C. § 1981and 1981a. The common questions of fact would include, inter alia: (1) whether Spectrum discriminated against African-American employees because of their race with regards to promotions; (2) whether compensatory and punitive damages, injunctive relief, and other equitable remedies for the class are warranted; and (3) whether Spectrum discriminated against African-Americans in other terms and

conditions of employment. The details of the Representative Plaintiff's claims are encompassed within the claims prosecuted on behalf of the class and set forth in this Complaint.

### B. TYPICALITY

26. The claims of the Representative Plaintiff is typical of those of the members of the class. The Representative Plaintiff and all class members have been and are similarly adversely affected by the systemic racially discriminatory practices complained of herein. Specifically, the representative claims, like those of the class members, arise out of Defendant's pervasive discriminatory conduct with regard to race discrimination in promotions and other terms and conditions of employment. The relief necessary to remedy the claims of the Representative Plaintiff is the same relief that is necessary to remedy the claims of the putative class members in this case. The Representative Plaintiff seeks the following relief for individual claims and class claims asserted herein: (1) declaratory judgment that Defendant has engaged in systemic race discrimination against African-Americans; (2) a permanent injunction against such continuing discrimination; (3) injunctive relief which restructures Spectrum's selection policies, practices and procedures so that the Plaintiff and the class members will be able to compete fairly in the future for jobs, promotions and enjoy terms and conditions of employment traditionally afforded

similarly situated Caucasian employees; (4) backpay, front pay, compensatory damages, and other equitable remedies necessary to make the Plaintiff, and the class, whole from Spectrum's past discrimination; and, (5) attorneys' fees, costs, and expenses.

### C. **NUMEROSITY AND IMPRACTICABILITY OF JOINDER**

27. The class that the Representative Plaintiff seek to represent is too numerous to make joinder practicable. The proposed class consists of numerous former, current, and future African-Americans who either have been, are, or will be, employed by Spectrum. Spectrum's pattern and practice of race discrimination also makes joinder impracticable by making it impractical and inefficient to identify many members of the class prior to the determination of the merits of Spectrum's class wide liability. Thus, the number of Class members is currently indeterminate, but is certainly numerous.

### D. **ADEQUACY OF REPRESENTATION**

28. The Representative Plaintiff will fairly and adequately protect the interests of the class inasmuch as they are broadly representative, as reflected in the preceding paragraphs. There are no conflicts of interest present with the members of the proposed class as each would benefit from the imposition of a remedy for the Defendant's discriminatory employment practices. The Representative Plaintiff has

retained counsel experienced in litigating major class actions in the field of employment discrimination, and who are prepared and able to meet the time and fiscal demands of class action litigation of this size and complexity. The combined interest, experience, and resources of the Representative Plaintiff and her counsel to litigate competently the individual and class claims of the race based employment discrimination at issue satisfy the adequacy of representation requirement under Fed.R.Civ.P. 23(a)(4).

### E. EFFICIENCY OF CLASS PROSECUTION OF COMMON CLAIMS

29. Certification of a class of similarly-situated African-Americans is the most efficient and economical means of resolving the questions of law and fact that are common to the individual claims of the Representative Plaintiff and the proposed class. The individual claims of the Representative Plaintiff require resolution of the common question of whether Defendant has engaged in a systemic pattern of discrimination against African-Americans. The Representative Plaintiff seeks remedies to undo the adverse effects of such discrimination in her own life, career and working conditions and to prevent such in the future. The Representative Plaintiff has standing to seek such relief because of the adverse effect that such discrimination has had on her individually and on African-Americans, in general. In order to gain such

relief for herself, as well as for the putative class members, the Representative Plaintiff will first establish the existence of systemic race discrimination as the premise of the relief she seeks. Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations. Certification of the class of African-Americans affected by the common questions of law and fact is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for the Representative Plaintiff, the class and the Defendant. The Representative Plaintiff's individual race discrimination and class claims are premised upon the traditional bifurcated method of proof and trial for systemic disparate treatment claims of the type at issue in this complaint. Such a bifurcated method of proof and trial is the most efficient method of resolving such common issues.

### F. CERTIFICATION IS SOUGHT PURSUANT TO FED. R. CIV. P. 23(b)(2)

30. Spectrum has acted on grounds generally applicable to the named Plaintiff and the proposed class by adopting and following systemic practices and procedures that discriminate on the basis of race. Upon information and belief, race discrimination in selection decisions is Spectrum's standard operating procedure

rather than sporadic occurrences. Spectrum has refused to act on grounds generally applicable to the putative class by: (1) refusing to adopt or follow selection procedures which do not systemically discriminate against African-Americans; and (2) refusing to provide equal terms and conditions of work to African-Americans. Spectrum's systemic race discrimination and refusal to act on grounds that are non-discriminatory have made appropriate final injunctive relief and declaratory relief with respect to the class as a whole. The injunctive relief and declaratory relief are the predominate reliefs sought because they are both the cumulation of the proof of the Defendant's individual and class-wide liability at the end of Stage I of a bifurcated trial and the essential predicate for the named Plaintiff's and class members' entitlement to monetary and non-monetary remedies at Stage II of such a trial. Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the existence of systemic racial discrimination against African-American individuals. Such relief is the factual and legal predicate for the named Plaintiff's and the class members' entitlement to injunctive and equitable remedies caused by such systemic discrimination.

### G. ALTERNATIVELY CERTIFICATION IS SOUGHT PURSUANT TO FED. R.CIV. P. 23(b)(3)

31. The common issues of fact and law affecting the claims of the

Representative Plaintiff and the proposed class members, including, but not limited to, the common issues identified above, predominate, over any issues affecting only individual claims.  A class action is superior to other available means for the fair and efficient adjudication of the claims of the named Plaintiff and members of the proposed class.

32. The cost of proving the Defendant's pattern or practice of discrimination makes it impracticable for the named Plaintiff and members of the proposed class to control the prosecution of their claims individually.  The Southern District of New York  is the most logical forum in which to litigate the claims of the Representative Plaintiff and the proposed class in this case because upon information and belief, the Defendant's human resource function emanates from here; the persons responsible for overseeing the human resources function are here; upon information and belief Spectrum maintains personnel records here; and engages in or ratifies illegal conduct adversely affecting the Plaintiff and the proposed classe here.

### H.  ALTERNATIVELY CERTIFICATION IS SOUGHT PURSUANT TO FED. R. CIV. P. 23(c)(4) FOR INJUNCTIVE AND DECLARATORY RELIEF

33. Alternatively, claims for injunctive and declaratory relief for the Injunctive Relief Class are properly certified under Federal Rule of Civil Procedure 23(c)(4) because such claims present only common issues, the resolution of which

would advance the interests of the parties in an efficient manner.

### I. ALTERNATIVELY CERTIFICATION IS SOUGHT PURSUANT TO FED. R. CIV. P. 23(c)(4) FOR CLASS WIDE LIABILITY

34. Alternatively, class wide liability claims are properly certified under Federal Rule of Civil Procedure 23(c)(4) for the Classes because such claims present only common issues, the resolution of which would advance the interests of the parties in an efficient manner.

### J. PUNITIVE DAMAGES MAY ALTERNATIVELY BE CERTIFIED PURSUANT TO FED.R.CIV.P. 23(b)(2)

35. Punitive damages liability may alternatively be certified under Federal Rule of Civil Procedure 23(b)(2) because such relief focuses on the conduct of Spectrum and not the individual characteristics of the Plaintiffs and are an allowable form of incidental monetary relief.

## VIII. COUNTS

### COUNT ONE

### Intentional Discrimination on the Basis of Race in Violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981

36. The Representative Plaintiff restates and incorporates by reference all applicable paragraphs above as part of this Count of the Complaint.

37.     Defendant has discriminated against the Representative Plaintiff and the class she seeks to represent with regards to selection procedures and other terms and conditions of employment because of their race, in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

38.     Defendant's conduct has been intentional, deliberate, willful and conducted with disregard for the rights of the Plaintiff and members of the proposed class.

39.     By reason of Defendant's discriminatory employment practices, the Representative Plaintiff and the proposed class members have experienced extreme harm, including loss of compensation, wages, back and front pay, and other employment benefits, and, as such, are entitled to all legal and equitable remedies available under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

## COUNT TWO

### Disparate Impact Discrimination on the Basis of Race
### In Violation of Title VII of the Civil Rights Act of 1964

40.     The Representative Plaintiff restates and incorporates by reference all applicable paragraphs above as part of this Count of the Complaint.

41.     The criteria utilized by Defendant in making selection decisions-to include promotions-on the basis of race in violation of §703(k) of Title VII, 42 U.S.C.

§2000e-2(k).

42. Defendant allows an overwhelmingly Caucasian group of selectors to use non-transparent and unmeasurable process(es) in making employment decisions which allows them to manipulate the selection process(es) to the detriment of their African-American employees.

43. These processes disparately impacted African-American employees because they allow subjectivity and favoritism to influence employment decisions. Because of this, the decision-makers are free to exercise their discretion in an unguided, subjective manner that provides a ready mechanism for Caucasians to vent discriminatory feelings upon African-American employees.

44. The Defendant has maintained these discriminatory policies, patterns, and/or practices both within and outside the liability period in this case.

45. As a direct result of the Defendant's discriminatory policies and/or practices as described above, Plaintiff and the class she seek to represent have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

### COUNT III (Individual ADAAA of 2008Claim)

46. As stated, Plaintiff is a person with a disability, has a history of disability and/or is perceived or regarded as disabled. 42 U.S.C. § 12102. The

Defendant is an employer and was Plaintiff's employer, under, 42 U.S.C. § 12111(5).

47. Despite Plaintiff's disability, with or without a reasonable accommodation, he was, and is, able to perform the essential functions of a number of jobs, within the Defendant's organization to include Sr. Manager Digital Sales-Media. Thus, Plaintiff meets the definition of a "qualified individual with a disability," pursuant to 42 U.S.C. § 12111

48. The Defendant intentionally and with reckless disregard, discriminated against Plaintiff due to her disability and have otherwise classified, and segregated Plaintiff in a way which has adversely affected her job opportunities and status due to her disability, as that term is defined by the ADA. 42 U.S.C. § 12112, 29 C.F.R. 1630.5.

49. The Defendant has also limited Plaintiff and utilized standards, criteria and/or methods of administration which discriminated against her by subjecting Plaintiff to discriminatory termination which is prohibited by the ADAAA. 42 U.S.C. § 12112, 29 C.F.R. 1630.6 and 1630.7.

50. The Defendant's standards, criteria and methods of administration have the effect of discriminating against Plaintiff based on her or perceived disability; and they perpetuate discrimination of others who are subject to common administrative control. Such standards, criteria and methods of administration are not job related

and they are not consistent with business necessity.  29 C.F.R. 1630.7.

51. The Defendant has also failed to reasonably accommodate Plaintiff and has taken adverse action against Plaintiff due to the need to make a reasonable accommodation.  The reasonable accommodation would have caused no undue hardship to the Defendant.  42 U.S.C. § 12112, 29 C.F.R. 1630.9.

52. The Defendant has, too, violated the confidentiality provisions of the ADAAA, 29 C.F.R. 1630.13 and 1630.14 by divulging Plaintiff's confidential medical history to its employees and/or agents.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff and the putative Class pray for relief as follow:

1. Certification of the case as a class action on behalf the proposed class(es);

2. Designation of the Plaintiff as the representative of the Class;

3. Designation of Plaintiff's Counsel of record as Class Counsel;

4. A declaratory judgment that the practices complained of herein are unlawful and violate Title VII, 42 U.S.C. § 1981, and the ADAAA of 2008;

5. A preliminary and permanent injunction against Spectrum and its officers, agent, successors employees, representatives, and any and all persons acting in correct with them from engaging in each of the unlawful policies, practices,

customs, and usages set forth herein;

    6.    An order that the Spectrum institute and carry out policies, practices, and programs that provide equal employment opportunities for all minorities, and that it eradicate the effects of its past and present unlawful employment practices;

    7.    For back pay, front pay and other monetary relief according to proof (including interest and benefits);

    8.    For all damages sustained as a result of the Spectrum's conduct according to proof;

    9.    For compensatory damages, nominal damages, and liquidated damages according to proof;

    10.    For exemplary and punitive damages in an amount commensurate with the Spectrum's ability to pay, to deter future conduct, and to set an example for others;

    11.    For reasonable attorneys' fees and cost including under to the extent allowable by law;

    12.    Pre-judgment and post-judgment interest, as provided by law;

    13.    For such ancillary orders, decrees and such further legal and equitable relief as may be necessary to enjoin and restrain the improper conduct and wrongdoing of Spectrum; and,

14. For such other and further relief as the Court deems proper.

## JURY TRIAL DEMANDED

Respectfully submitted,


/s/Roderick T. Cooks
Roderick T. Cooks (*pro hac vice forthcoming*)
Lee D. Winston (*pro hac vice forthcoming*)

Attorneys for the Plaintiff and Proposed Class


**OF COUNSEL:**
Winston Cooks, LLC
505 20th Street North
Suite#815
Birmingham, AL 35203
Telephone:  (205) 502-0970
Facsimile:   (205) 278-5876

**DEFENDANT'S ADDRESS:**
Charter Communications
1633 Broadway Floor 39
New York, NY 10019